<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

JOSH EMANUEL and JECO TECHNOLOGIES, INC.,

        *Plaintiffs*,

    v.

CARDIS ENTERPRISES INTERNATIONAL (USA), INC.,

        *Defendant*.

Civil No.: 15-7843 (KSH) (CLW)

<u>OPINION</u>

This matter comes before the Court by way of a motion (D.E. 10) by defendant Cardis Enterprises International (USA), Inc. ("Cardis") to dismiss under Federal Rule of Procedure 12(b)(2) or, in the alternative, transfer venue to the District of Delaware pursuant to 28 U.S.C. § 1404. Plaintiffs Josh Emanuel and JECO Technologies, Inc. (JECO) filed a complaint in the District of New Jersey on November 2, 2015, alleging breach of contract, unjust enrichment, and conversion. (D.E. 1 ("Compl.").) Cardis asserts that the contract at issue mandates that this action be brought in Delaware and that there is no personal jurisdiction over Cardis in New Jersey.

**I.      Background**

Plaintiffs claim diversity jurisdiction as a resident of New Jersey (Emanuel) and a Florida LLC (JECO) suing Cardis, a Delaware corporation, for an amount exceeding $75,000.[1]  (Compl.

---

[1] The Complaint erroneously identifies Cardis as organized under Florida law in paragraph 4; paragraph 5 and Cardis's moving brief indicate that Cardis is a Delaware corporation and that complete diversity exists.  (Compl. ¶ 5;

¶¶ 2-5.)  Cardis provides "payment processing services and solutions to online retailers, brick and mortar stores, and mobile wallet providers."  (D.E. 10-3 ¶ 5.)  The sparse complaint alleges that JECO and Cardis entered into a consulting agreement on June 25, 2013 (the "Agreement"), whereby Emanuel would develop and maintain strategic relationships for roll out of a Cardis product.[2]  (*Id.* ¶¶ 7-8.)  In exchange, JECO would be paid $30,000 monthly, plus any expenses incurred by Emanuel, and Emanuel would have access to stock options if he met certain incentive levels.  (*Id.* ¶ 9.)  In November of that same year, the parties mutually terminated the Agreement on the condition that Cardis would pay the consulting fees and expenses already incurred, which came to $43,000.  (*Id.* ¶¶ 10-12.)  After Cardis failed to pay, plaintiffs brought suit in this Court for full damages under the Agreement.  (*Id.* ¶ 15.)  In the Agreement there is a provision titled, "Governing Law and Associated Entities," which provides:  "This Agreement and the performance hereof shall be construed and governed in accordance with the law of the State of Delaware and the courts of Delaware shall have exclusive jurisdiction."  (D.E. 10-4 ("Agreement") at 4, § 5.9.)

## II.    Discussion

Cardis first argues that this Court has no personal jurisdiction over it and must dismiss the complaint.  In the alternative, it asks the Court to transfer this action to the District of Delaware.  "[W]here there is a bona fide dispute over the existence of *in personam* jurisdiction, the interests of justice are furthered by transfer of the action to another district in which the action could have clearly been brought."  *Amtrust at Lloyd's Ltd. v. Breslin*, 2015 WL 1399588, at *4 (D.N.J. Mar. 26, 2015) (Chesler, J.) (citing *Schwilm v. Holbrook*, 661 F.2d 12, 16 (3d Cir.

---

D.E. 10 at 1.)  JECO's principal place of business is in Fairfield, New Jersey.  (Compl. ¶¶ 2, 5.)  Cardis's principal place of business is in New York.  (Compl. ¶¶ 4-5.)
[2] The Agreement provides that all services shall be rendered solely by Emanuel.  (D.E. 10-4 § 1.1(b).)

1981)).  Having reviewed the parties' arguments and applicable law, the Court has determined that its power to exercise personal jurisdiction over Cardis is murky at best and that the appropriate path is to transfer this matter to the District of Delaware, consistent with section 5.9 of the Agreement.

### a.  Personal Jurisdiction

Federal courts have personal jurisdiction over nonresident defendants "to the extent authorized under the law of the forum state in which the district court sits, within the constitutional limitations of due process." *MoneyGram Payment Sys., Inc. v. Consorcio Oriental, S.A.*, 65 Fed. Appx. 844, 849 (3d Cir. 2003) (citing Fed. R. Civ. P. 4(e)).  Since New Jersey's long-arm statute is coextensive with the limits of due process, *id.*, the inquiry is whether "the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (internal quotations omitted).

Personal jurisdiction may be either general or specific.  "[T]he threshold for satisfying the requirements for general jurisdiction . . . is substantially higher than in specific jurisdiction cases."  4 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1067.5 (3d ed. 2010).  General jurisdiction requires affiliations "so 'continuous and systematic' as to render [the foreign corporation] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 317 (1945).  With respect to corporations, "the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler*, 134 S. Ct. at 760 (internal quotation marks omitted).

3

Specific jurisdiction depends on the connection between the forum state and the underlying controversy giving rise to the litigation. *Goodyear*, 564 U.S. at 919. The Third Circuit has delineated a three-part inquiry:

> First, the defendant must have purposefully directed [its] activities toward the forum state, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985), and, second, the claim at bar must arise out of or be related to those activities. *Helicopteros Nationales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). Third, if these two requirements are met, then the court asks if jurisdiction would offend "notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.

*Harfouche v. Wehbe*, 950 F. Supp.2d 766, 770 (D.N.J. 2013) (Irenas, J.) (citing *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007)). "Ultimately, the existence of minimum contacts turns on the presence or absence of intentional acts of the defendant to avail itself of some benefit of a forum state." *MoneyGram*, 65 Fed. Appx. at 850.

The complaint acknowledges that Cardis is incorporated in Delaware and has a principal place of business in New York. (Compl. ¶¶ 4-5.) Plaintiffs then merely allege that Cardis entered into contract with JECO, which has its principal place of business in New Jersey, and that consulting services would be provided by Emanuel, who resides in New Jersey. (Compl. ¶¶ 2-3, 7-8.) Cardis has submitted a declaration from its CEO, stating that Cardis has not filed a certificate to conduct business in New Jersey, does not have any New Jersey clients, does not derive any revenue from New Jersey, does not advertise in New Jersey, has no bank accounts in New Jersey, and has no website hosted in New Jersey. (D.E. 10-3 ¶¶ 13-17.) Plaintiffs have not submitted any affidavits or certifications upon which the Court could rely to resolve disputed factual issues, such as where in-person contract negotiations were held.[3]

---

[3] Plaintiffs' opposition brief states that "Cardis negotiated the agreement with Emanuel in his New Jersey office and drafted the Consulting Agreement to provide that Emanuel perform his required services from his Wayne, New Jersey Office." (D.E. 14 at 6.) Cardis asserts that negotiations took place in New York. (D.E. 10 at 7; D.E. 18 at 4.)

The parties also dispute Cardis's connection to New Jersey. Cardis asserts that it has no connections with New Jersey beyond its interactions with JECO and Emanuel, while plaintiffs argue that the Agreement contemplates solicitation of clients nationwide—including New Jersey. (D.E. 18 at 3; D.E. 14 at 7.) Generally, the nature of the relationship amongst the parties is disputed and would require factual development for a proper minimum contacts analysis.[4] That expenditure of resources and time—possibly resulting in a finding that this Court lacks jurisdiction or, upon a finding of jurisdiction, a renewed motion to transfer—is unnecessary insofar as the parties' Agreement provides this Court with the basis and authority to transfer the action to Delaware.

### b. Transfer Venue

Transfer analysis is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The decision of whether to transfer an action falls within the sound discretion of the trial court. *Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp.2d 560, 564 (D.N.J. 2000) (Wollin, J.) (citing *Lony v. E.I. DuPont de Nemours & Co.*, 886 F.2d 628, 632 (3d. Cir. 1989)).

---

[4] For example, plaintiffs argue that Cardis was "establishing a full-time permanent presence in New Jersey and that future sales and profitable relationships [would] originate from Emanuel's efforts in New Jersey"—that is, Cardis was effectively running its business operations through JECO's and Emanuel's office in Fairfield, New Jersey. (D.E. 14 at 4.) Despite the provision for stock options, this argument is not in line with the short duration (less than a year) and scope of the Agreement in this case. *Cf. Burger King*, 471 U.S. at 478-80 (despite no physical ties to the forum state beyond a brief training course, personal jurisdiction proper where contract had substantial connection to the state by virtue of purchasing a long-term (20-year) franchise there); *Eaton Corp. v. Maslym Holding, Co.*, 929 F. Supp. 792, 797 (D.N.J. 1996) (Barry, J.) (finding personal jurisdiction proper where contracts created commitment to share trademarks, patents, and other intelligence over a ten-year period).

A motion to transfer under § 1404(a) generally requires a district court to weigh a number of case-specific factors. *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Ct for W. Dist. Of Tex.*, 134 S. Ct. 568, 579 (2013). The private interests the Court must balance include:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Jumara*, 55 F.3d 873, 879. The public interests to be considered include:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80.

However, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in the clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404 motion be denied." *Atlantic Marine*, 134 S. Ct. at 581.

A forum selection clause is presumptively valid and enforceable unless the non-moving party establishes "(1) that it is the result of fraud or overreaching; (2) that enforcement would violate strong public policy of the forum; or (3) that enforcement would in the particular circumstances of the case result in jurisdiction so seriously inconvenient as to be unreasonable." *Moneygram*, 65 Fed. Appx. at 846 (internal quotation marks omitted).

The Agreement at issue contains the following provision:

> 5.9    Governing Law and Associated Entities. This Agreement
> and the performance hereof shall be construed and governed in
> accordance with the law of the State of Delaware and the courts of
> Delaware shall have exclusive jurisdiction.

Plaintiffs do not argue that there was any fraud involved in negotiating either the Agreement or

section 5.9 specifically.  They also do not claim that enforcement would violate any public

policy of either New Jersey or Delaware.  Rather, they assert that enforcement would be "unjust,

inconvenient and unreasonable" because the Agreement contains boilerplate language and the

title of the clause giving exclusive jurisdiction to Delaware courts identifies it as a "choice of

law" clause and does not explicitly contain language identifying the clause as also dealing with

"forum selection."  (D.E. 14 at 10-11.)  Plaintiffs also argue that New Jersey is more convenient

for the parties and that Cardis does not have "any particular interest or compelling reason for the

matter to be transferred to Delaware other than to inconvenience the Plaintiffs."  (D.E. 14 at 10.)

The law is clear on this issue.  Where there is a valid contract with a provision granting

exclusive jurisdiction to courts of a particular jurisdiction, that mandatory forum selection clause

must be enforced.  *Atlantic Marine*, 134 S. Ct. at 581.  Convenience is insufficient to supplant

the valid agreement bargained for at the time JECO and Cardis entered into contract.  *See id.*

Despite plaintiffs' claims, the location of the parties and witnesses in New York and New

Jerseydoes not make the forum "so gravely difficult and inconvenient that [plaintiffs] will for all

practical purposes be deprived of [their] day in court."  (D.E. 14 at 12 (quoting *M/S Bremen v.

Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972).); *cf. Gen. Engineering Corp. v. Martin Marietta

Alumina, Inc.*, 783 F.2d 352, 359-60 (3d Cir. 1986) (finding forum selection clause designating

Maryland courts was enforceable despite most witnesses residing in Virgin Islands); *Intermetals

Corp. v. Hanover Intern. Aktiengesellschaft Fur Industrieversicherungen*, 188 F. Supp.2d 454,

459-60 (D.N.J. 2001) (Cooper, J.) (forum selection clause in marine contract not rendered

unreasonable by expense or inconvenience of New Jersey party having to litigate in Austria despite witnesses and events being located in New Jersey).

Further, the fact that the title of the clause does not explicitly state each detail of the provision is of no moment; the concise and clear language of the contract requires that "the courts of Delaware shall have exclusive jurisdiction." *See Atlantic City Assoc. v. Carter & Burgess Consultants, Inc.*, 2008 WL 4951354, at *4, n.3 (D.N.J. Nov. 13, 2008) (Hillman, J.) (more specific contract provisions control over more general provisions) (citing *Assisted Living Assoc. of Moorestown, L.L.P. v. Moorestown Twp.*, 31 F. Supp.2d 389, 399 (D.N.J. 1998) (Orlofsky, J.)).  There is no basis for concluding that it would be unreasonable to hold plaintiffs to the bargain they struck in the Agreement that forms the basis of this dispute.

## III.    Conclusion

The Court finds that the provision of the Agreement granting the courts of Delaware exclusive jurisdiction is enforceable and transfers this case to the District of Delaware.  An appropriate order will follow.

s/ Katharine S. Hayden_____
Katharine S. Hayden, U.S.D.J.

Dated:  August 5, 2016